# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **MICHELLE LYNN MOSLEY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **5:10-cv-471-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Michelle Mosley ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This Court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the Court **AFFIRMS** the decision denying benefits.

## I. Procedural History

Plaintiff filed her application for a period of disability and disability

insurance benefits on February 23, 2005, alleging a disability onset date of October 1, 2004.  (R. 94).  After the denial of her application, (R. 68), Plaintiff requested a hearing before an ALJ, (R. 76), which was held on June 27, 2007, in Gadsden, Alabama.  (R. 178-184).  On April 14, 2008, the ALJ denied the claim, (R. 56-65), which became the final decision of the Commissioner of the SSA when the Appeals Council refused to grant review.  (R. 3-5).  Having timely pursued and exhausted her administrative remedies, Plaintiff filed this action for judicial review pursuant to section 1631 of the Social Security Act, 42 U.S.C. § 1383(c)(3).

At the time of the hearing, Plaintiff was 51 years old with a sixth grade education.  (R. 110).  Plaintiff alleges that she has not engaged in substantial gainful activity since her alleged onset date of disability of October 1, 2004. (R. 98).  Her past relevant work was as a cashier.  *Id*.  Plaintiff's disability report alleges she suffers from obesity and attention deficit disorder ("ADD").  (R. 97).

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id.*  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must be disabled as that term is

defined by the Social Security Act ("The Act"), i.e., "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under The Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f).  The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;

(2)   whether the claimant has a severe impairment;

(3)   whether the impairment meets or equals one listed by the Secretary;

(4)   whether the claimant is unable to perform his or her past work; and

(5)   whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other

than step three, leads to a determination of 'not disabled.'  *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

Performing the Five Step analysis, initially, the ALJ determined that Plaintiff's lack of work activity and medically determinable physical impairments of morbid obesity and chronic back and knee pain met Steps One and Two. (R. 61).  Next, the ALJ found that Plaintiff did not satisfy Step Three since her physical impairments neither met nor equaled the requirements for any listed impairment.  *Id*.

In Step Four, the ALJ determined that Plaintiff had the residual functional capacity to, (1) "lift and carry up to 10 pounds occasionally and five pounds frequently," and (2) "sit 6 hours in an 8-hour workday, and stand/walk 2 hours in an 8-hour workday."  (R. 61-62).  However, the ALJ determined that, "due to her obesity, the claimant may have difficulty standing for extended periods of time." (R. 62).  Further, the ALJ held that Plaintiff could not perform her past relevant work as a cashier, which the vocational expert classified as light in exertion, because it exceeds her current residual functional capacity of sedentary work.  (R.

64, 183).

Lastly, in Step 5, the ALJ considered the Plaintiff's age, education, work experience, residual functional capacity, and impairments, and determined that there are a significant number of jobs in the national economy that Plaintiff can perform.  (R. 64-65).  Based on the foregoing, the ALJ determined that Plaintiff is not disabled.  (R. 65).  Plaintiff contends that the ALJ committed reversible error for several reasons, each of which the court addresses below.

## V. Analysis

A.     *The ALJ did not err in conducting Plaintiff's administrative hearing in her absence.*

On August 22, 2005, Plaintiff requested a hearing and indicated that she wished to be present.  (R. 76).  On March 30, 2007, the Commissioner sent Plaintiff and her counsel at that time[1] a Notice of Hearing for June 27, 2007.  (R. 77-84). There is no dispute that the Commissioner sent the notice to the address used for all previous and subsequent communications to Plaintiff.  Doc. 8 at 11, 15.  Despite receiving the notice of the hearing, on June 27, 2007, Plaintiff's counsel appeared for the hearing and represented that he (1) did not know where she was, (2) had not heard from her since October 2006, and (3) had sent appointment notices

---

[1] Plaintiff was represented by William Crunk, Jr. during the administrative process, (R. 83), but is represented by Seth Thompson for her appeal in this court.

unsuccessfully for her to come to his office for three consecutive months prior to the hearing.  (R. 180).  The ALJ proceeded with the hearing and informed counsel that if he could "find her within the next 30 days and let me know that she wants a hearing I'll give you a new hearing on that.  If I don't hear from you then I'll go ahead and I'll issue a Decision."  (R. 181).  The ALJ issued his decision on April 14, 2008.  (R. 65).  There is no evidence in the record that Plaintiff's counsel located Plaintiff and attempted to contact the ALJ to request a new hearing.

Plaintiff first contends that the ALJ failed to follow the procedures prescribed by Social Security Ruling ("SSR") 79-19[2] and *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981), which govern the requirements for a valid waiver of a claimant's right to appear, or to appear through a representative, and further contends that the ALJ's failure to follow that ruling prejudiced her.  Doc. 8 at 11-15.  However, Plaintiff's reliance on SSR 79-19 is misplaced because she did not

---

[2]SSR 79-19: Titles II, XVI and XVII: Waiver of Personal Appearance at a Hearing, states that its purpose is:

> To establish requirements necessary for a valid waiver of an individual's right to appear, in person or through a representative, and present evidence or information at a hearing before the Office of Hearings and Appeals; or before a presiding officer of a Medicare carrier in the case of hearings under the Supplementary Medical Insurance Program.  The intent of this policy modification is to ensure that such waivers are made voluntarily and knowingly; i.e., with knowledge of the advantage of personal appearance and the consequences of a waiver of the right to appear at the hearing.

elect to waive her right to appear at the hearing, and, in fact, checked the box titled,

"I wish to appear at a hearing."  (R. 76).  Instead, despite receiving notice of the

hearing from the Commissioner and from her counsel, for reasons only she knows,

she chose not to appear.  Moreover, her counsel attended the hearing.  Therefore,

SSR 79-19, which deals with "voluntarily and knowingly" waivers of an

"individual's right to appear, in person or through a representative," does not

apply.

Next, Plaintiff contends that the ALJ erred by failing to comply with the

Hearings, Appeals, and Litigation Manual ("HALLEX") I-2-4-25 D., Dismissal

Due to Claimant's Failure to Appear.  Doc. 15-16.  Section D. Claimant's

Representative Appears at Hearing Without the Claimant - Constructive Waiver of

Right to Appear at Hearing, states the following:

> If a claimant's representative appears at a scheduled hearing without
> the claimant:
>
> 1.   The ALJ may determine that the claimant has constructively
>      waived the right to appear at the hearing if the representative is
>      unable to find the claimant, the notice of hearing was mailed to
>      the claimant's last known address, and the contact procedures of
>      20 CFR §§ 404.938 and 416.1438 have been followed.
>      If the hearing includes expert witnesses, the ALJ may choose to
>      proceed with the hearing, accepting the testimony of the
>      witnesses and allowing the claimant's representative to question
>      the witnesses and make arguments regarding the claimant's
>      application.

> The ALJ *should* advise the claimant's representative that a Notice to Show Cause will be issued asking the claimant why he or she did not appear, and why a supplemental hearing should be held. If the claimant fails to respond to the Notice to Show Cause or fails to provide good cause for failure to appear at the scheduled hearing, the ALJ may then determine that the claimant has constructively waived his or her right to appear for a hearing, and the ALJ may issue a decision on the record.
>
> 2.  If the claimant provides good cause for failure to appear, the ALJ will offer the claimant a supplemental hearing to provide testimony.
>
> **NOTE**:   If a representative appears at a scheduled hearing without the claimant, dismissal is never appropriate.

(emphasis added).

Plaintiff concedes that the Commissioner sent the notice of the hearing to her last known address, which is where she received all correspondence prior to and subsequent to the hearing. Doc. 8 at 11, doc. 12 at 2. Further, Plaintiff does not claim that the ALJ failed to follow the contact procedures of 20 CFR §§ 404.938 and 416.1438. Therefore, the ALJ had the authority to conclude that a constructive waiver had occurred, and could issue a ruling despite Plaintiff's absence.

Notwithstanding Plaintiff's admission that the ALJ sent her notice of the hearing and that she constructively waived her right to be present, she argues that the ALJ "did not advise [Plaintiff's] representative that a Notice to Show Cause would be issued to determine why [Plaintiff] did not appear and determine whether

supplemental hearing should be held on her claim." Doc. 8 at 15-16. First, the court notes that HALLEX I-2-4-25 D. does not state that the ALJ <u>must</u> advise Plaintiff's counsel that he will issue a show cause notice. Rather, the HALLEX uses the discretionary language "should." As such, because the ALJ is not required to do so, it is not reversible error if the ALJ elects not to issue a show cause notice. Secondly, the ALJ stated on the record that Plaintiff's counsel had thirty days to locate Plaintiff and request a supplemental hearing. (R. 180). This statement from the bench is synonymous with a show cause notice, and, in fact, is more favorable to Plaintiff since it allowed Plaintiff's representative thirty days, instead of the recommended fifteen for a show cause notice, to locate her and respond. Therefore, the ALJ did not commit reversible error in failing to issue a written show cause notice.

In her reply brief, Plaintiff argues that *Starr v. Astrue*, No. 4:07CV01073, 2008 WL 4402195 (E.D. Mo. Sept. 24, 2008), supports her contention that remand is warranted to allow her a supplemental hearing since the ALJ failed to issue a show cause notice. (Doc. 12 at 4-5). In other words, having failed to appear the first time, failed to respond to her then counsel's efforts to contact her, or to request another hearing that the ALJ was willing to afford her after she failed to show, Plaintiff now seeks another bite of the apple on a technicality. This court is not

persuaded.  Moreover, as Plaintiff points out, the ALJ in *Starr* issued a show cause

notice, to which that plaintiff's daughter responded and asserted cause for her

father's absence.  *Starr*, 2008 WL 4402195, at *1.  The ALJ rejected the plaintiff's

reason and found that he waived his right to appear at a hearing.  *Id*. at *2.

Reversing and remanding the ALJ's decision, the district court found that plaintiff

had provided good cause.  *Id*. at *4-5.  In other words, *Starr* is distinguishable.

Here, unlike *Starr*, Plaintiff never informed the ALJ why she failed to attend the

hearing.  Moreover, despite the opportunity to do so, Plaintiff never requested a

rehearing prior to ALJ's April 2008 decision - which the ALJ issued nine months

after the hearing, giving Plaintiff more than sufficient time to request a

supplemental hearing.  Furthermore, she presents no valid excuse to this court for

her failure to appear.  Therefore, *Starr* is not instructive, and does not support

Plaintiff's contention that the ALJ committed reversible error.

B.    *The ALJ did not commit reversible error by not swearing in the vocational*
      *expert at the hearing.*

Plaintiff argues that because the ALJ failed to swear in the vocational expert

("VE") at the hearing, he failed "to follow his own regulations regarding sworn

testimony, [and Plaintiff's] claim should be remanded for another hearing."  Doc. 8

at 17.  Plaintiff cites 20 C.F.R. § 404.950(e), which states that witnesses at a

hearing "shall testify under oath or affirmation, *unless* the [ALJ] finds an important reason to excuse them from taking an oath or affirmation," (emphasis added). Further, Plaintiff cites HALLEX I-2-6-545, which states that, "[t]he ALJ *should* take all testimony under oath or affirmation.  Testimony can be received from a witness who refuses to swear or affirm, but any such refusal must be noted on the record," (emphasis added).

 Again, Plaintiff seeks to rely on a technicality to overturn a valid decision by the ALJ.  Plaintiff makes no assertion at all that the VE would have testified more credibly if sworn in.  Nor does she assert that the ALJ would have given less credit to the VE's sworn testimony.  In any event, Plaintiff's argument is unpersuasive and the authorities she cites do not support her contention that the ALJ committed reversible error.  Regarding § 404.950(e), there is nothing in the record that indicates that the ALJ did not excuse the VE from taking the oath, which the regulation authorizes him to do.  Further, HALLEX I-25-6-545 states only that a witness's testimony *should* be taken under oath; sworn testimony is not, therefore, required.  The drafters of the HALLEX could have required sworn witness testimony by using "shall," but declined to do so.  Therefore, the ALJ's failure to swear in the VE at the hearing is not reversible error and cannot serve as a basis to remand.

C.    *The ALJ did not err by failing to develop a full and fair record of Plaintiff's
      educational level and alleged ADD, and possible listing under 12.05(c).*

   1.    <u>Educational level and ADD</u>.

   Plaintiff asserts that the ALJ erred in not fully developing the record

regarding her mental limitations because she has a sixth grade education which the

ALJ characterized as marginal, and she reported that she thinks she has ADD.

Doc. 8 at 17-18.  Substantial evidence does not support Plaintiff's argument, and,

in fact, demonstrates otherwise.  Plaintiff indicated on her Disability Report that as

a convenience store cashier from 1994-1999, she "operated cash register, made

bank deposits, stocked, cleaned store."  (R. 98, 105).  Additionally, Plaintiff

answered "yes" to whether her cashier job required her to, (1) use machines, tools,

or equipment, (2) use technical knowledge or skills, and (3) "do any writing,

complete reports, or perform duties like this."  (R. 99).  Therefore, the ALJ was

without reason to suspect that Plaintiff's educational level prevented her from

being gainfully employed, or required further development of the record.  Indeed,

the evidence in the record does not support a contrary finding and actually belies

Plaintiff's contention that she is mentally limited.  Further, Plaintiff fails to cite *any*

evidence in the record that suggests she suffers from a mental impairment and,

based on this court's review, none exists.  Accordingly, this court will not find

error in the ALJ's decision not to order psychiatric or psychological examinations based on a plaintiff's self report and diagnosis of ADD because her "mind wonders [sic]."

Plaintiff also cites *McCall v. Bowen*, 846 F.2d 1317, 1320 (11th Cir. 1988), to support her assertion that the ALJ "erred in failing to further develop [Plaintiff's] mental limitations." Doc. 8 at 21. In *McCall,* the plaintiff's treating physicians "suggested that she might be suffering from a psychological condition." *Id*. at 1320. The court held that, under Section 8(a) of the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 421(h), "her own testimony of mental problems," and "suggestions made by her treating physicians might well be enough to require the appointment of a psychiatrist or psychologist under the requirements of section 421(h)." *Id*. The *McCall* facts are distinguishable because, here, Plaintiff's treating physicians have not suggested any mental impairments. Therefore, the ALJ did not err in failing to develop the record regarding Plaintiff's alleged mental limitations.

2. <u>Listing 12.05(c) Mental Retardation.</u>

Plaintiff argues that the ALJ erred in failing to develop the record as to whether Plaintiff met or equaled Listing 12.05(c) Mental Retardation. Doc. 8 at 21. Listing 12.05(c) requires a plaintiff to meet one of several requirements.

Requirement A. states that "[m]ental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded."  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.  In Plaintiff's Daily Activities Questionnaire, she stated that she, (1) cares for her personal needs daily, i.e., bathing, grooming, dressing, without assistance, (R. 129), prepares and cooks meals, and independently shops for her personal needs, (R. 130).  Based on this evidence, Plaintiff does not meet Requirement A.

Requirements B., C., and D. require valid verbal, performance, or full scale IQ of (1) 59 or less, (2) 60 through 70 or less and significant work related limitation of function, and (3) 60 through 70 with at least two other listed impairments, respectively.  There is no evidence in the record of Plaintiff's IQ.  Further, her work history and own self-characterization demonstrates that she has the ability to function effectively, count money, operate machinery, and write reports.  The ALJ had no reasonable basis to order an IQ test.  Therefore, the ALJ's decision that Plaintiff did not meet Listing 12.05(c) Mental Retardation is supported by substantial evidence.

D.    *Plaintiff's medical evidence presented to the Appeals Counsel does not require remand or reversal of the ALJ's decision.*

The Appeals Council "looked at medical records" from Drs. McCleney, Urbina, and Southside Medical Center and decided to deny Plaintiff's request for review of the ALJ's decision.  (R. 4).  Plaintiff relies on *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1267 (11th Cir. 2007), to assert that this court should remand this case "for further consideration of medical evidence that she presented to the Appeals Counsel," but was not available to the ALJ.  Doc. 8 at 24.  Specifically, Plaintiff alleges that the ALJ "should use the services of a medical advisor to determine what effect [Plaintiff's] sleep apnea had on her residual functional capacity."  *Id*.

*Ingram* instructs this court to review the decision of the Appeals Council to determine if the ALJ's decision denying benefits is supported by substantial evidence of the entire record, including the new evidence submitted to only the Appeals Council.  *Ingram*, 496 at 1267.  The ALJ determined that, "[b]ased on the testimony of the [VE], the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  A finding of 'not disabled' is therefore appropriate."  (R. 65).

The new medical evidence Plaintiff presented simply does not support her

contention that she is disabled.  In fact, the bulk of the evidence is related to normal problems experienced by the general public.  For example, Dr. Barry McCleney saw Plaintiff five times from 2006-2007.  On October 27, 2006, December 8, 2006, February 21, 2007, and February 23, 2007, she complained of congestion, chills, and sinuses.  (R. 8-12).  She was diagnosed with sinusitis and para-influenza, and treated with various antibiotics.  *Id*.  On September 17, 2007, Plaintiff complained of "increased urinary frequency," "burning sensation during urination," and "lower back pain."  (R. 8).  She was diagnosed with acute cystitis, and prescribed antibiotics.  *Id*.

Plaintiff also sought treatment at Southside Medical Clinic ("SMC") from April 2008 through April 2009.  (R. 15-27).  On April 25, 2008, Plaintiff received various blood studies and was informed that they were "ok."  (R. 24).  On November 5, 2008, SMC treated Plaintiff for "headache - cough - chest congestion, chills & fever."  (R. 21).  She was diagnosed with bronchitis and muscles spasms, and treated with antibiotics, steroids, and Flexeril.  *Id*.  On November 10, 2008, she returned to SMC, and the treatment notes indicated that Plaintiff had "taken all meds - not any better, still coughing."  (R. 20).  She was again diagnosed with bronchitis and wheezing.  *Id*.  On January 13, 2009, Plaintiff was seen at SMC where her chief complaint was "coughing again," but did not exhibit chills or fever.

(R. 19).  She was diagnosed with possible asthma.  *Id*.  On March 25, 2009, her chief complaint again was coughing.  (R. 17).  She was assessed as having "asthma exacerbation," prescribed steroids and Advair to treat her asthma, and told to follow up if she did not feel better.  *Id*.  Lastly, on April 24, 2009, Plaintiff complained of an allergic reaction resulting in a rash and itching.  (R. 15).  The treatment notes regarding her diagnosis and assessment are not legible.

Finally, Plaintiff was treated by Dr. Luis Urbina at Gadsden Pulmonary & Sleep Clinic.  On May 22, 2008, the treatment notes are largely illegible, but her recent history indicated that she "falls asleep on the road," "snores loudly," "husband says she stops breathing," and takes Aleve as needed.  (R. 51).  There is a reference to continuous positive airway pressure ("CPAP"), but it is not clear if it was prescribed or if Plaintiff was advised to continue use.  (R. 50).  On July 16, 2008, Plaintiff received a polysomnography[3] exam, which revealed "apneas and partial apneas noted."  (R. 39).  The EKG revealed no significant results.  *Id*.  After some adjustment from CPAP pressures to bi-level positive airway pressure ("BiPAP"), it was noted that "patient tolerated well."  *Id*.  On July 29, 2008, Dr. Urbina evaluated Plaintiff and prescribed BiPAP with full face mask and weight reduction.  (35).  On August 28, 2008, she was a "no call no show" for her

---

[3] A polysomnogram is a sleep study.

appointment with Dr. Urbina.  (R. 34).  On October 15, 2008, Dr. Urbina

performed another polysomnogram, which revealed "severe obstructive sleep apnea

syndrome."  (R. 37).  Dr. Urbina recommended "BiPAP 17/13 with full face mask

and a heated humidifier.  Weight reduction is recommended."  *Id*.  On May 11,

2009, Dr. Urbina's treatment notes indicate that she is to continue BiPAP.  (R. 29).

Lastly, on June 25, 2009, Plaintiff called to reschedule her appointment.  (R.  27).

Based on the new evidence from Drs. McCleney and Urbina, and the

treatment notes from SMC, the Appeals Council did not err in denying review

because the new evidence is not contrary to the evidence currently in the record

and further supports the ALJ's decision to deny benefits.  Plaintiff's diagnoses and

treatment for sinusitis and bronchitis do not support a conclusion that she is

disabled.  As it relates to Plaintiff's diagnosis of sleep apnea, the substantial

evidence indicates that her condition was well controlled with BiPAP.  The record

is void of any medical evidence that demonstrates Plaintiff is disabled.  Therefore,

the Appeals Council properly denied review of the ALJ's decision, based on the

new evidence.

E.      *The ALJ complied with Social Security Ruling 00-4P and did not err in*
        *failing to independently verify that the VE's testimony was consistent with*
        *the Dictionary of Occupational Titles.*

Without support from the record, Plaintiff argues that the VE's testimony is

inconsistent with the Dictionary of Occupational Titles ("DOT").  Doc. 8 at 24-25.

SSR 00-4P states the following, in pertinent part:

**Policy Interpretation**
Using Occupational Information at Steps 4 and 5
In making disability determinations, we rely primarily on the DOT
(including its companion publication, the SCO) for information about
the requirements of work in the national economy. We use these
publications at steps 4 and 5 of the sequential evaluation process. We
may also use VEs and VSs at these steps to resolve complex
vocational issues.  We most often use VEs to provide evidence at a
hearing before an ALJ.

**The Responsibility to Ask About Conflicts**
When a VE or VS provides evidence about the requirements of a job
or occupation, the adjudicator has an affirmative responsibility to ask
about any possible conflict between that VE or VS evidence and
information provided in the DOT. In these situations, the adjudicator
will:
Ask the VE or VS if the evidence he or she has provided conflicts with
information provided in the DOT; and
If the VEs or VSs evidence appears to conflict with the DOT, the
adjudicator will obtain a reasonable explanation for the apparent
conflict.

As Plaintiff correctly recites, during the hearing, the ALJ asked the VE if his

"opinions are consistent with the Dictionary of Occupational Titles?"  Doc. 183.

The VE answered, "yes."  The ALJ, therefore, fulfilled his responsibility to inquire

into conflicts, and SSR 00-4P and case law do not require the ALJ to make an

independent determination absent an apparent conflict.  *See Brijbag v. Astrue*, No.

8:06-CV-2356-T-MAP, 2008 WL 276038, at *2 (M.D. Fla., Jan. 31, 2008) ("the

ALJ need not independently corroborate the VE's testimony and should be able to rely on such testimony where no apparent conflict exists with the DOT.") (citations omitted).

Plaintiff also argues that the ALJ did not consider Plaintiff's marginal education when posing the hypothetical to the VE, and "because it is unclear what reasoning levels are required for each job identified by the VE, the ALJ did not fully develop the record." Doc. 8 at 25. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's *impairments*." *Wilson v. Barnhart,* 284 F.3d 1219, 1227 (11th Cir. 2002) (emphasis added). Therefore, the ALJ's hypothetical need only consider Plaintiff's severe impairments of obesity and chronic back and knee pain. (R. 61). Based on Plaintiff's Medical Source Opinion, which indicated that Plaintiff was able to stand two hours in an eight hour day, walk one hour in an eight hour day, and sit seven hours in an eight hour day, (R. 173), the ALJ asked the VE if Plaintiff could "return to her past work with these limitations." (R. 182). The VE stated that Plaintiff could not perform her past relevant work as a cashier, which was classified as light exertional level and semi-skilled because her physical limitations require, "sitting I think was six out of eight hours with only standing two, so that would put it primarily at a sedentary

level of exertion." (R. 182-83). The ALJ next inquired as to whether sedentary jobs existed, to which the VE affirmatively replied that there were 1,500 sorting bench work jobs, and 2,000 subassembly jobs, such as production workers, packers, and inserters. (R. 183). In other words, the ALJ properly considered Plaintiff's physical limitations due to her obesity and chronic knee and back pain, and did not err by declining to consider Plaintiff's sixth grade education or her alleged ADD. Therefore, substantial evidence supports that there was no inconsistency between the jobs identified by the VE and the DOT, and that the ALJ complied with SSR 00-4P.

## VI. CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence, and applied proper legal standards in reaching this determination. The Commissioner's final decision is, therefore, AFFIRMED. A separate order in accordance with the memorandum of decision will be entered.

Done the 29th day of October, 2010.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE